UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

LORENZO PERRY,                )
                              )
        Petitioner,            )
                              )    No.  4:04CV01712 RWS/FRB
                              )
v.                            )
                              )
JAMES PURKETT,                )
                              )
        Respondent.            )

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Presently before this Court is the pro se petition of Missouri state prisoner Lorenzo Perry ("petitioner") for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket No. 2-1 ("Petition") filed December 9, 2004.) All pretrial matters have been referred to the undersigned United States Magistrate Judge for appropriate disposition pursuant to 28 U.S.C. § 636(b).

On August 19, 1998, following a jury trial in the Circuit Court of St. Louis County, Missouri, petitioner was convicted of first degree robbery and armed criminal action stemming from his involvement in the armed robbery of a Burger King restaurant along with another man, Leo Stith,[1] on August 31, 1997.  (Resp. Exh. A.)

---

[1]The record contains several different spellings of Leo Stith's surname. The undersigned will use the spelling "Stith" because that is the spelling petitioner uses.  However, when quoting the Missouri state court, the undersigned will use the spelling as it appears in the transcript.

-1-

Petitioner and Stith were tried separately, and Stith did not testify at petitioner's trial.  (Id.)  On September 18, 1998, the Honorable Larry L. Kendrick sentenced petitioner as a persistent offender to fifteen years and five years, respectively, the sentences to run concurrently.  (Resp. Exh. B at 99-102.)  At present, petitioner is incarcerated at the Eastern Reception Diagnostic and Correctional Center located in Bonne Terre, Missouri.[2]

Petitioner appealed his conviction and sentence to the Missouri Court of Appeals, alleging that the trial court erred in overruling his objection to Detective Paul Neske's testimony that Stith did not admit to concealing his car's licence plate with a T-shirt.  (Resp. Exh. C.)  On February 15, 2000, the Missouri Court of Appeals affirmed petitioner's conviction and sentence, finding that the trial court did not abuse its discretion in allowing Detective Neske's testimony into evidence.  (Resp. Exh. E); State v. Perry, 14 S.W.3d 228 (Mo. Ct. App. 2000).

Petitioner filed a timely pro se post-conviction motion and request for an evidentiary hearing pursuant to Missouri Supreme Court Rule 29.15.  (Resp. Exh. F at 3-9.)  Counsel was subsequently appointed, and petitioner's amended post-conviction motion was

---

[2]Because petitioner has completed service of the five-year sentence for armed criminal action, he does not fulfill the "in custody" requirement of 28 U.S.C. § 2254(a) for his challenge to that conviction and sentence.  Petitioner is, however, currently serving his fifteen year sentence for first degree robbery, and is therefore "in custody" for the purposes of challenging that sentence.

filed on February 5, 2001.  (Id. at 17-37.)  Therein, petitioner alleged as follows: (1) trial counsel was ineffective for failing to timely object when the prosecutor elicited testimony at trial regarding Leo Stith's confession to the robbery; (2) trial counsel was ineffective for failing to object to the prosecutor's statement during closing argument that Stith admitted his part in the crime; and (3) trial counsel was ineffective for failing to object to Detective William George's testimony that the firearm used in the robbery had been altered for purposes of concealment.  (Id.)  On May 10, 2003, the motion court denied petitioner's post-conviction motion.  (Id. at 46-53.)

Petitioner appealed the denial of his post-conviction motion to the Missouri Court of Appeals, alleging that trial counsel was ineffective for failing to timely object during Detective Neske's testimony that Stith did not admit to concealing his car's license plate with a T-shirt, and failed to object when the prosecutor, during closing argument, said that Stith "admitted his part" in the robbery. (Resp. Exh. G.)  In support, petitioner argued that the evidence concerning Stith's confession was prejudicial because it directly incriminated petitioner as Stith's accomplice, even though petitioner's name was never mentioned.  On February 24, 2004, the Missouri Court of Appeals affirmed the motion court's judgment.  (Resp. Exh. I); Perry v. State, 131 S.W.3d 374 (Mo. Ct. App. 2004).

In the instant petition, petitioner claims he received

ineffective assistance of counsel because counsel failed to object when Detective Neske testified regarding Stith's confession; failed to timely object when Detective Neske stated that Stith denied covering his car's license plate with a T-shirt; and failed to object when the prosecutor, during closing argument, stated that Stith had admitted to "his part" in the robbery. (Petition at 9, 12.)

## I. Exhaustion Analysis

Before this Court may grant relief on the merits of a petition for a writ of habeas corpus, a petitioner must first exhaust his state law remedies. 28 U.S.C. § 2254(b)(1); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). The exhaustion requirement is satisfied if a petitioner has fairly presented his claim first in state court, or if there are no currently available non-futile state remedies. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988). A review of the record in this case shows that petitioner's ineffectiveness claim is exhausted inasmuch as petitioner properly presented it to the Missouri state courts, where it was determined on the merits.

## II. Procedural Default Analysis

A claim is procedurally barred from federal habeas review unless the petitioner has, at each step of the judicial process, fairly presented the substance of the claim to the state courts. Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir. 1994); Wemark v. Iowa,

322 F.3d 1018, 1020-21 (8th Cir. 2003) (citing Anderson v. Groose, 106 F.3d 242, 245 (8th Cir. 1997)). This requirement ensures that the state courts have been alerted to "the federal nature of each claim," and have been given a "fair opportunity to apply controlling legal principles to the facts bearing upon [the] claim." Palmer v. Clarke, 408 F.3d 423, 430 (8th Cir. 2005) (citing Baldwin v. Reese, 541 U.S. 27, 29, (2004) and Wemark, 322 F.3d at 1020-21). Failure to present a claim on appeal from the denial of post-conviction relief constitutes a procedural default. Clay v. Bowersox, 367 F.3d 993, 1005-06 (8th Cir. 2004); Reese v. Delo, 94 F.3d 1177, 1181 (8th Cir. 1996). A claim is deemed "fairly presented" to the state courts when a petitioner has "properly raised the 'same factual grounds and legal theories' in the state courts which he is attempting to raise in his federal habeas petition." Wemark, 322 F.3d at 1020-21 (citing Joubert v. Hopkins, 75 F.3d 1232, 1240 (8th Cir. 1996)).

A review of the record shows that petitioner has properly preserved his ineffective assistance claim for federal review, inasmuch as he fairly presented it to the Missouri state courts during his post-conviction proceedings.

### III. **Merits of Claim**

The facts adduced at trial and summarized by the Missouri Court of Appeals, in its supplementary memorandum filed in conjunction with petitioner's direct appeal, show the following:

-5-

The state charged Appellant with aiding the armed robbery of a Burger King restaurant committed by Leo Steth (Steth) on August 31, 1997. At about 5:40 p.m. on that day, Steth entered the restaurant wearing a stocking over his face, a pair of latex gloves and a dark blue T-shirt. Steth was carrying a gun. There were three employees present: Erin Morris (Morris), Amika Johnson (Johnson) and assistant manager Michelle Ryan (Ryan). Steth jumped over the counter and ordered Morris and Johnson to get into the freezer. Steth ordered Ryan to take money from the safe and put it in a bag. Steth then put Ryan in the freezer.

After 10-15 seconds, Ryan kicked the freezer door open, and the three employees looked out the storefront. They saw a two-toned, blue and gray, Acura sedan with a driver and one passenger drive out of the parking lot. The car stopped, and the passenger, wearing a white shirt, got out of the car and took something white, like a towel or a T-shirt, off of the license plate.

Ryan called the police, and the employees gave descriptions of the men, the clothes they wore, and the car they drove. Officer Jeff Parnas (Parnas) heard the descriptions over the radio and spotted a two-toned blue and gray Acura with two men matching the descriptions given by the Burger King employees, which he pulled over. Officer Richard Jakubowicz (Jakubowicz) arrived and assisted Parnas with the traffic stop. Parnas removed the passenger from the car, handcuffed him, and placed him inside his patrol car. At trial, Parnas identified the passenger as Appellant. The police put Steth in another patrol car. Parnas testified that Steth gave permission to the police to search the vehicle. In the trunk, the officers found a .22 caliber rifle behind the spare tire, a box of latex gloves as well as two loose gloves, a ski mask, some nylon socks and a plastic bag filled with cash and coins totaling $401.25. The rifle had a magazine containing ten bullets.

> Neske testified to the following statements made to him by Appellant. At the Clayton police office, Appellant told Detective Paul Neske (Neske) that at about 3:30 p.m. the day of the robbery, he and Steth were watching football at Steth's house when they decided to go for a drive. As they drove, Steth told Appellant that he had robbed a Burger King on Dunn Road while Appellant's cousin worked there as a manager. Steth told Appellant the robbery had been easy and asked him if he would help Steth commit another one that afternoon. Appellant agreed to remain in the car and act as a lookout. They drove to the Burger King on Dunn Road, and Steth removed a rifle, rubber gloves, and a stocking from the trunk. Steth put on the gloves and stocking. Steth entered the Burger King and returned a few minutes later with a bag. They drove out of the parking lot and Steth told Appellant to get out of the car and remove a white T-shirt that had been placed on the back license plate. They drove to a convenience store and were subsequently apprehended by police. Neske asked Appellant to make a taped statement, but he refused. Neske also testified that during his questioning, Steth admitted to the robbery, but did not tell Neske that he placed a T-shirt over the license plate before the robbery occurred.[3]

(Resp. Exh. E at 2-3.)

Petitioner was tried in the Circuit Court of St. Louis County before the Honorable Larry L. Kendrick from August 17, 1998 through August 19, 1998, cause number 97CR-5017B. (Resp. Exh. A.) In his defense, petitioner claimed that Leo Stith was solely responsible for the robbery, and that petitioner was merely a

---

[3]Because petitioner does not rebut these facts with clear and convincing evidence, they are presumed correct. 28 U.S.C. § 2254(e)(1).

-7-

passenger in Stith's car, in the wrong place at the wrong time, and had not participated in the robbery.

## A. Ground one - Ineffective Assistance of Trial Counsel

Petitioner herein alleges that trial counsel was ineffective because he failed to object when Detective Neske testified regarding Stith's confession; failed to timely object when Detective Neske testified that Stith did not admit covering his car's license plate with a T-shirt; and failed to object when the prosecutor, during closing argument, stated that Stith had admitted to "his part" in the robbery. (Petition at 9, 12.) Petitioner references the portions of Detective Neske's testimony found in the trial transcript at pages 279 through 282, and references a statement in the prosecutor's closing argument found at page 9 of the Addendum to the Record on Appeal. (Id.)

The portion of Detective Neske's testimony petitioner cites reads as follows:

> Question (by Prosecuting Attorney): After you interviewed Lorenzo Perry, did you then go and interview Leo Steth?
>
> Answer (by Detective Paul Neske): Yes I did.
>
> Q. And did you also go through the Advice of Rights form with Leo Steth?
>
> A. Yes, I did.
>
> Q. Did you do it in the same manner that you did with Lorenzo Perry?
>
> A. Yes, I did.

Q. And did he also initial all the Advice of Rights form like Mr. Perry did, and did you also - -

A. Yes, he did.

Q. And did you also sign that form?

A. Yes, I did.

Q. When you talked to Leo Steth, did he admit that he was driving that vehicle?

A. Yes, he did.

Q. Did he admit that he had gone into Burger King wearing that stocking over his head, carrying a weapon and having gloves on?

A. Yes, he did.

Q. And did Leo tell you what he did as far as employees?

A. Yes.

Q. What did Leo tell you he did after he got in the Burger King?

A. He put them in the freezer.

Q. Did he tell you that he had the manager open the safe?

A. Yes, he did.

Q. And that he had the money?

A. Yes, he did.

Q. Did Leo Steth mention anything about dropping it when he went out the doors?

A. Yes.

A. He had one of the - - I don't know if it was the manager or one of the employees, empty a cash register with some change into the bag, and as he was going out the door the bag ripped and money fell on the floor between the doors.

You walk into the entrance and then there's like a hallway or little landing, and you walk into the main entrance, and he dropped it and the bag ripped open right there.

Q. Did he say he stopped to pick it up?

A. No, I don't think he did. He just kept going.

Q. You do not recall him talking about putting any additional money in the bag?

A. No.

Q. You talked to Leo Steth; did he tell you the same route that was taken that you've already said that Lorenzo Perry told you?

A. Yes, he did.

Q. And did Leo Steth tell you that he had placed the T-shirt over the license plate before he went in?

A. No. He did not.

(PETITIONER'S COUNSEL MR. YARNS): Your Honor, I'm going to object. Can we approach?

THE COURT: You may.

(CONFERENCE AT THE BENCH, AS FOLLOWS:)

MR. YARNS: Your Honor, my objection is that based upon the anticipated testimony to that question of Officer Neske, based on his report that Leo's statement said that was an action by Lorenzo. It's my understanding that pursuant to a motion that was made pretrial that we are not - - the State is not to be allowed to get into anything that Steth says about Perry's involvement in this case.

And I anticipate the answer to that question will be that Leo Steth said that Lorenzo had placed the T-shirt over the license plate. And I think that's crossing the line of the motion and getting into what Steth testified Lorenzo did, and I don't think the State can get into that.

(Resp. Exh. A at 279-82.)

-10-

The statement by the prosecuting attorney to which petitioner claims counsel should have objected reads as follows: "Leo Steeth admitted his part in this robbery." (Record on Appeal, Addendum, at 9.)

Section 2254(d)(1) allows federal habeas courts to test the determinations of state courts "only against clearly established federal law, as determined by the Supreme Court of the United States," and prohibits the issuance of a writ of habeas corpus unless the state court's decision is "contrary to or involved an unreasonable application of clearly established federal law." Williams v. Taylor, 529 U.S. 362, 379 (2000). A state court's decision is contrary to clearly established Supreme Court precedent when it is opposite to the Court's conclusion on a question of law, or different than the Court's conclusion on a set of materially indistinguishable facts. Williams, 529 U.S. at 412-13; Carter v. Kemna, 255 F.3d 589, 591 (8th Cir. 2001). Applying this standard to the case at bar, the undersigned recommends a finding that the state court's decision regarding petitioner's claim of ineffective assistance of trial counsel was not contrary to, and did not involve an unreasonable application of, clearly established federal law.

At the time petitioner's conviction became final, the law was clearly established that the Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to

effective assistance of counsel. U.S. Const. amend. VI; Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, ineffective assistance is defined as deficient performance resulting in prejudice, with performance being measured against an "objective standard of reasonableness." Strickland, 466 U.S. at 687-88. The petitioner bears a heavy burden in overcoming a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

State court factual findings are presumed to be correct. 28 U.S.C. § 2254(d). The presumption applies to factual findings made by the state appellate court. Smith v. Jones, 923 F.2d 588, 590 (8th Cir. 1991). State court findings may not be set aside unless they are unsupported by the record. Sumner v. Mata, 449 U.S. 539, 547-49 (1981); Spence v. Nix, 945 F.2d 1030, 1031 (8th Cir. 1991). Petitioner bears the burden of establishing that the state court's factual determinations are erroneous. Williams v. Armontrout, 912 F.2d 924, 930 (8th Cir. 1990) (en banc) (citing Sumner, 449 U.S. at 550.) Petitioner does not challenge the state court factual findings set forth herein. After carefully reviewing the record, the undersigned finds the state court's findings of fact are supported by the record, and are adopted herein to the extent they apply to the claim raised in the instant petition. See Williams, 912 F.2d at 930-31.

In reviewing petitioner's ineffective assistance claim, The Missouri Court of Appeals quoted Strickland, correctly

identified the standard articulated therein, and, after analyzing petitioner's claim under Strickland's "deficient performance resulting in prejudice" standard, found that trial counsel's failure to object was a matter of trial strategy, and further found that the admission of such evidence did not prejudice petitioner. The court noted petitioner's reliance on the case of Bruton v. United States, 391 U.S. 123 (1968), in which the Supreme Court held that the admission of a codefendant's confession implicating defendant when the codefendant does not testify violated the defendant's right to cross-examination protected by the Confrontation Clause. The Court of Appeals noted that reversal was not mandated even in cases involving an obvious Bruton violation if the evidence of the defendant's guilt was overwhelming, and the prejudicial effect of the codefendant's statement was insignificant by comparison, citing State v. Clemons, 946 S.W.2d 206, 227 (Mo. banc 1997). Specifically, the court found as follows:

> The record reflects both Movant and Stith made statements to the police. Prior to trial, Movant's counsel filed a motion in limine seeking to preclude the State from mentioning Movant's alleged involvement in the robbery by way of Stith's confession. The State agreed it would make no reference to Movant while questioning the police officer regarding Stith's confession.
>
> During trial the State elicited testimony from a police officer with respect to Stith's confession. The police officer testified Stith indicated he was the person who committed the robbery, going into great detail about what he wore, what weapon he used, how the robbery unfolded, and that he drove the

getaway car. When the police officer testified Stith told police he did not place a T-shirt over the license plate, trial counsel objected on the grounds that the State was about to violate the motion in limine which precluded any mention of Movant when discussing Stith's confession. In response, the State indicated it would go no further in the questioning, and the police officer was cautioned prior to testifying to refrain from discussing what Stith told him about Movant's involvement. The trial court overruled the objection, noting it would be "well taken if the State were to proceed."

During closing argument, the State argued "Leo Stith admitted his part in the robbery." No objection was made at this time. However, in Movant's counsel's closing argument, counsel argued repeatedly Stith was solely responsible for the robbery and Movant was simply in the wrong place at the wrong time.

In Movant's direct appeal, this Court held the portion of Stith's confession indicating he did not cover the license plate with a T-shirt was not hearsay. This Court noted Stith's answer did not reveal the identity of the person who placed the T-shirt over the license plate, and it was not clear from the answer as to whether it directly implicated Movant. Moreover, this Court found evidence of Movant's guilt was strong, thus he suffered no prejudice.

Here, the record is clear trial counsel's strategy was to argue Stith was responsible for the robbery and Movant was merely a passenger in his car. Trial counsel filed a motion in limine and objected when the State broached implicating Movant by way of Stith's confession. Moreover, there is no reason to conclude that a vague reference by Stith about not removing the T-shirt from the license plate "formed the essential foundation on which the jury built its verdict." <u>Clemons</u>, 946 S.W.2d at 227. Finally, as noted above, this Court found overwhelming evidence of guilt with respect to Movant's involvement in

>     the robbery. Therefore, even if there were a
>     violation of <u>Bruton</u>, Movant suffered no
>     prejudice.
>
> (Resp. Exh. I at 4-6.)

The state court's decision denying petitioner relief is well-based on law and fact. Examination of the record reveals that trial counsel's performance was not deficient. Regarding Detective Neske's testimony, counsel filed a motion in limine prohibiting the mention of petitioner's name during any testimony concerning Stith's confession, and objected when it appeared that Detective Neske might be about to testify as to whether Stith's statement implicated petitioner in the robbery. Regarding counsel's failure to object to other testimony concerning the fact that Stith had confessed, or to the prosecutor's statement during closing argument that Stith admitted to "his part" in the robbery, counsel's failure to object was reasonable trial strategy, inasmuch as counsel was using Stith's confession to lay the foundation for arguing petitioner's innocence. This is apparent because, during his own closing argument, petitioner's counsel repeatedly emphasized to the jury that Stith had confessed to the robbery and was the sole person responsible for the crime, and that petitioner was simply a passenger in Stith's car, in the wrong place at the wrong time.

Second, even if petitioner could demonstrate that counsel's performance was deficient, petitioner could not show that he was prejudiced thereby. To show prejudice, petitioner would be

required to demonstrate a "reasonable probability" that the result of the proceeding would have been different but for counsel's unprofessional errors. <u>Strickland</u>, 466 U.S. at 694. Petitioner could not so demonstrate. As the Missouri Court of Appeals noted, there is no reason to conclude that Detective Neske's "vague reference" regarding Stith's statement about not removing the T-shirt "formed the essential foundation on which the jury built its verdict." (Resp. Exh. I at 5-6) (citing <u>Clemons</u>, 946 S.W.2d at 227.) Nor is there reason to conclude that other testimony regarding Stith's confession, or the prosecutor's statement that Stith admitted to his part in the robbery, prejudiced petitioner. The evidence of petitioner's guilt was overwhelming. As the motion court noted:

> All three victims in the robbery saw the vehicle drive away, saw the tall person with the dark blue shirt who was the one who came into the business with the gun and took the money was driving and saw the passenger who was wearing the white shirt get out and take a white object off the back license plate. One witness gave a detailed description of the vehicle the subjects were driving. The vehicle was stopped within minutes with Leo Stith driving and wearing a dark blue shirt, Movant in the passenger seat and wearing a white shirt, and in the trunk were the proceeds of the robbery, the weapon used, rubber gloves and the mask. All three witnesses identified the vehicle Leo Stith and Movant were in as the vehicle used in the robbery. Movant also made a statement to Det. Neske which included admissions that Movant and Leo Stith talked about doing a robbery, that Movant agreed to be the lookout in that robbery, that Movant watched Leo Stith get rubber gloves out of the trunk, pull a skull

> stocking cap down over his head, grab a rifle
> and go into the business, that Leo Stith then
> came out a few minutes later with a bag, that
> they drove off, that they then stopped after
> leaving the parking lot and Movant got out and
> removed a white t-shirt off the back license
> plate, that they stopped and got gas, and that
> they were then stopped by the police.

(Resp. Exh. G at A4-A5.)

The state court's decision denying petitioner relief on his claim of ineffective assistance of trial counsel was well-based on law and fact. Petitioner does not offer, nor is the undersigned aware of, any clearly established federal law, as determined by the United States Supreme Court, of which the state court's decision runs afoul. Petitioner has not shown that the state court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(2). It therefore cannot be said that the state court's decision "resulted in a decision that was contrary to, or involved an unreasonable application of," clearly established federal law. 28 U.S.C. § 2254(d)(1). Therefore, petitioner's claim of ineffective assistance of counsel should be denied.

Therefore, for all of the foregoing reasons,

**IT IS HEREBY RECOMMENDED** that petitioner Lorenzo Perry's petition for a writ of habeas corpus (Docket No. 2-1) be dismissed

without further proceedings.

The parties are advised that they have ten days to file objections to this Report and Recommendation. Failure to timely file objections may result in waiver of the right to appeal questions of fact. <u>Thompson v. Nix</u>, 897 F.2d 356, 357 (8th Cir. 1990).

_/s/ Frederick R. Buckles_
UNITED STATES MAGISTRATE JUDGE

Dated this 12th day of October, 2007.